Solve E. **D'IPPOLITO**, Edward A. D'Ippolito, William C. D'Ippolito, John B. D'Ippolito, 3rd, Marie Barry, Frank D'Orio, Dewey Spadoni and Elsie Masciarella, Plaintiffs-Appellants,

v.

**CITIES SERVICE COMPANY**, Cities Service Oil Company, Burl S. Watson, E. L. Stauffacher, F. M. Simpson and Edward W. Lang, Defendants-Appellees.

Solve E. **D'IPPOLITO**, Edward A. D'Ippolito, William C. D'Ippolito, John B. D'Ippolito, 3rd, Marie Barry, Estate of Frank D'Orio, Dewey Spadoni and Elsie Masciarella, Plaintiffs-Appellants,

v.

**AMERICAN OIL COMPANY**, Atlantic Refining Company, California Oil Company, Gulf Oil Corporation, Humble Oil and Refining Company, Sinclair Refining Company, Sun Oil Company and Texaco, Inc., Defendants-Appellees.

Solve E. **D'IPPOLITO**, Edward A. D'Ippolito, William C. D'Ippolito, III, Marie Barry, Estate of Frank D'Orio, Dewey Spadoni, Elsie Masciarella, and D'Ippolito Oil Company, a Body Corporate of the State of Delaware, Petitioners,

v.

Hon. Sylvester J. **RYAN**, United States District Judge For the Southern District of New York, Respondent.

Nos. 216, 217, Dockets 30797, 30798, 30953.

United States Court of Appeals
Second Circuit.

Argued Dec. 1, 1966.

Decided March 9, 1967.

See also D.C., 39 F.R.D. 610.

Robert G. Levy, Baltimore, Md. (Berryl A. Speert, George W. Liebmann, David M. Blum, Baltimore, Md., McGoldrick, Dannett, Horowitz & Golub, New York City, on the brief), for appellants.

J. B. H. Carter, Philadelphia, Pa., for appellees.

Townley, Updike, Carter & Rodgers, New York City; Sam Erwin, Chicago, Ill., for appellee American Oil Co.

Boyden & Sarnoff, New York City; Howrey, Simon, Baker & Murchison, Washington, D. C.; Roy W. Johns, E. J. Kremer, Jr., Philadelphia, Pa., for appellee Atlantic Refining Co.

Cravath, Swaine & Moore, New York City; Richard W. Martin, Perth Amboy, N. J., for appellee California Oil Co.

Frederick L. Scofield, Arthur L. Vangeli, New York City; Jessee P. Luton, Jr., Pittsburgh, Pa., for appellee Gulf Oil Corp.

Milbank, Tweed, Hadley & McCloy, New York City; Henry Hartmann, New York City, for appellee Humble Oil & Refining Co.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City; Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellee Sun Oil Co.

James O. Sullivan, Paul B. Wells, Michael W. Graney, New York City, for appellee Texaco, Inc.

Joseph P. Walsh, D. K. McIntosh, Frank R. Clampitt, David Pendleton, Wickes, Riddell, Bloomer, Jacobi & McGuire, New York City, for appellee Sinclair Refining Co.

George H. Colin, New York City, for appellees Cities Service Co., Cities Service Oil Co. and individual appellees.

Before FRIENDLY, SMITH and ANDERSON, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Seven members of the D'Ippolito family and the estate of an eighth, on certification by the District Court under Rule 54(b), appeal from a decision of the United States District Court for the Southern District of New York, Sylves-

ter J. Ryan, Chief Judge, which dismiss-ed appellants and seven New Jersey corporations[1] as plaintiffs in a private antitrust action brought against nine major oil companies and certain corporate officials, and thereby left a Delaware corporation as sole party plaintiff. No appeal is taken from the dismissal as to the New Jersey corporations. A petition for mandamus has been filed attacking Judge Ryan's denial of permission to file a proposed second consolidated amended complaint and his refusal to certify that denial for interlocutory review under 28 U.S.C. § 1292(b). The decision of the district court is reversed and remanded for reinstatement of the appellants as plaintiffs. The petition for writ of mandamus is denied.

Appellants' claim essentially is that they were damaged by a conspiracy in violation of the antitrust laws in restraint of trade in the sale of gasoline in a four state area. They first entered the gasoline business in the 1930's and by the end of World War II had only one delivery truck. During the 'fifties, appellants' enterprise grew rapidly and by the end of the decade they owned a highly successful business in the sale of unbranded gasoline. They operated as a partnership until 1955; thereafter, appellants began to form the seven New Jersey corporations. By 1960 they had 144 service stations in New Jersey, Pennsylvania, Delaware and Maryland. However, as their success increased, they had a corresponding difficulty in obtaining gasoline supplies from the major oil companies. This difficulty is the basis of appellants' action and allegedly necessitated the formation of the Delaware corporation.

That corporation, the D'Ippolito Oil Company, was formed in December 1960 by appellants and the Hess Oil and Chemical Company. Hess paid in $250,000, provided a twenty year supply contract and received 49% of the stock in the Delaware corporation; appellants also paid in $250,000 and received 51% of the stock. On December 15, 1960 a Purchase Agreement was entered into by appellants "individually and as trustee" for the New Jersey corporations by which appellants agreed to deliver to the Delaware corporation 100% of the stock of the New Jersey corporations for $1,-250,000. Of this sum, $315,000 was to be paid immediately by check and $935,-000 was to be paid in ten annual installments evidenced by a promissory note of the Delaware corporation. This note was secured by a mortgage on the physical assets of the Delaware corporation and a pledge agreement covering the Hess shares. Pursuant to the purchase agreement, appellants delivered their stock to the Delaware corporation and received a check for $315,000, the promissory note and the pledge agreement; the New Jersey corporations deeded their real estate to the Delaware corporation and the latter gave appellants a mortgage on the real estate to secure the promissory note; the New Jersey corporations were merged into the Delaware corporation; the appellants delivered to the Delaware corporation twenty year employment contracts and covenants not to compete for five years after the termination of their employment; the latter and Hess executed the gasoline supply agreement.

In January 1963 the original complaint was filed in this action in the Southern District of New York, against Cities Service, one of its subsidiaries and four of its employees. Named as plaintiffs were the Delaware corporation and the individuals as "assignees of the claims for relief and causes of action * * * as the former stockholders" of the New Jersey corporations and as "assignees of said claims and causes of action and as former stockholders, directors and liquidating trustees." On March 6, 1964, the identical parties plaintiff filed a second action in the Southern District against eight other

---

1. D'Ippolito, Inc.; D'Ippolito Oil Co., Inc.; D'Ippolito Gasoline Products, Inc.; D'Ippolito Fuel Oil Products, Inc.; Seaboard Fuel Oils, Inc.; Gas City, Inc.; Save Gas, Inc.

major oil companies. Later, the two actions were combined in an amended consolidated complaint. Listed as plaintiffs were the Delaware corporation, the individuals as directors, liquidating trustees and stockholders of the New Jersey corporations and the New Jersey corporations. This complaint also recited that the claims sued on "were not transferred to or merged in" the Delaware corporation "but rather were reserved in and preserved by" the New Jersey corporations "on behalf of themselves and the Stockholders thereof."

The consolidated amended complaint alleged in effect that plaintiffs' enterprise in its various forms was troublesome competition to the major oil companies' operations, particularly their sale of brand name gasoline; that defendants conspired to restrain the trade in gasoline in the four state area, discriminated against plaintiffs' business organizations, imposed limitations on them, reduced and cut off their supplies, forced them to dispose for an inadequate price of a major (49%) interest in the assets of their New Jersey corporations in order to survive at all in the form of the 51% owned Delaware corporation with a supply contract with Hess. It alleged also that the existence of the conspiracy was concealed and not learned of by plaintiffs until after March 28, 1960.

The defendants moved to dismiss or for partial summary judgment as to all plaintiffs except the Delaware corporation. After argument and before decision on the motion, plaintiffs sought leave to file a proposed second consolidated amended complaint which named as plaintiffs the Delaware corporation, Solve E., Edward A., William C. and John B. D'Ippolito, 3rd, as partners and the individuals as "assignees" of the New Jersey corporations and as parties directly injured. Although supposedly limited to clarification of the individuals' capacity to sue, the proposed amended complaint also detailed substantive claims based on a recently handed

down criminal indictment covering much of the same ground as appellants' suit.[2] By agreement, defendants' motions were deemed addressed to both complaints. The motion to dismiss was granted for failure to state a claim on behalf of the individual plaintiffs and the New Jersey corporations on which relief could be granted, as to which a certification was made under Rule 54(b) Fed.R.Civ.P., and the application for leave to file the second amended consolidated complaint was denied. This appeal from the dismissal as to the individual plaintiffs, and an application for writ of mandamus to require granting of leave to file the amended complaint and the issuance of a certificate under 28 U.S.C. § 1292(b) followed. No appeal was taken from the dismissal as to the New Jersey corporations.

▌ In dismissing the complaint as to the individual plaintiffs, Judge Ryan determined that there had been no reservation or assignment to the individuals at the time of dissolution of the partnership or merger in the Delaware corporation of any right of action against defendants theretofore existing. It may be conceded that neither in the consolidated amended complaint nor in the many confusing statements of position by counsel during the proceedings to date has there been any thoroughly clear and understandable exposition of the theory of plaintiffs' individual claims. However, we cannot affirm the dismissal, if under any reasonable reading the complaint states a claim under which relief can be granted. Arfons v. E. I. du Pont de Nemours, 261 F.2d 434 (2d Cir. 1958). This is especially so in the present private antitrust action which is imbued with a public interest and is therefore favored. Lawlor v. National Screen Serv. Corp., 349 U.S. 322, 329, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). Cf. J. I. Case Co. v. Borak, 377 U.S. 426, 432–433, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

---

2. Appellants were the principal complaining witnesses before the Grand Jury. The government has also filed a civil suit.

Appellants' claim of capacity to sue for injury suffered as shareholders of the New Jersey corporations from the compelled sale to the Delaware corporation meets the apparent obstacle of Bookout v. Schine Theatres, Inc., 253 F.2d 292, 295 (2d Cir. 1958), and the cases therein cited; indeed, the case seems *a fortiori* since there is no contention that Hess was a party to the conspiracy. We deem it unnecessary to consider whether these decisions should be reexamined, see Note, 101 U.Pa.L.Rev. 1071 (1953), since we find other sufficient grounds for sustaining the complaint.

On the other hand, we may read the complaint to allege damage to the partnership and to the New Jersey corporations, claims for which were not among the assets transferred first to the New Jersey corporations or thereafter to the Delaware corporation in the merger. Of course, appellees insist that any such claims, if they existed, passed to the New Jersey and then the Delaware corporations, and a trier may well in the end so find. Yet the D'Ippolitos, who were parties to the transactions claim otherwise, and there appears to be here a genuine issue of fact to be tried. As will appear below, Judge Ryan did not consider all the documents which purported to assign the claims. Also, in regard to reservation of partnership rights by the individual partners, although he stated "there is nothing in the record which even hints at any reservation of rights to the individual partners," possibly appellants can proffer some proof to Judge Ryan.

At common law, only the partners and not the partnership could sue. If partnership claims existed and did not pass to the corporations, action to enforce them would be maintained by the individual partners as plaintiffs. New York has modified the common law, however, and provides in CPLR § 1025 that "Two or more persons conducting a business as a partnership may sue or be sued in the partnership name * * *" This provision is "permissive and not mandatory," Ruzicka v. Rager, 305 N.Y.

191, 197, 111 N.E.2d 878, 881, 39 A.L.R. 2d 288 (1953), and thus a partner may still sue on "a debt due the partnership" but "must bring the action on behalf of and for the benefit of the partnership and may not recover on such an obligation individually." Kirschbaum v. Merchants Bank of New York, 272 App.Div. 336, 71 N.Y.S.2d 79, 80 (1947). New York law is applicable under Fed.R.Civ. P. 17(b) which provides that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States * * *"

Moreover, the resolutions of the directors of the Delaware corporation of April 19, 1963 and February 1, 1966 purport to recognize a reservation of the right to sue in the appellants, and, even if the issue of reservation to, or more properly perhaps transfer to, the individual shareholders of the right to sue for antitrust violations in the mergers be resolved against appellants, the Delaware corporation in the February 9, 1966 resolution purports to assign the claims, then already in suit. While this is not specifically spelled out in the complaint and was not discussed by Judge Ryan, it was before the court in the affidavits filed on the motion to dismiss, and may well be held to be encompassed within the claims of the complaint that the individuals had a standing to recover. Antitrust claims have been held assignable. The most frequent example seems to be the assignment of claims by members of a non-profit trade association to the association. See, e. g., Louisiana Farmers' Protective Union, Inc. v. Great Atlantic & Pacific Tea Co. of America, 131 F.2d 419 (8th Cir. 1942). However, other situations occur. Hicks v. Bekins Moving & Storage Co., 87 F.2d 583 (9th Cir. 1937); United Copper Sec. Co. v. Amalgamated Copper Co., 232 F. 574 (2d Cir. 1916).

Another basis advanced for individual claims is the coercion of three of the individuals, Edward A., William C., and John B. D'Ippolito, 3rd, as a result of the claimed conspiracy, to enter into covenants restrictive of their participation in gasoline business in the area. While this might in theory be the basis of individual claims, we are not disposed to give it weight here since the covenants are with a corporation of which appellants are majority shareholders and active managers and if the covenants were in fact the result of antitrust violations the prospect of their enforcement to the damage of appellants in this situation appears too remote to make possible establishment of measurable actual damage. Any damages for the five year period after the termination of employment seem too speculative. Additionally, any suit based on the covenants would cover only a portion of the recovery claimed because it would only involve three of the individuals and would be limited to the damages stemming from the covenants. Finally, the 1966 covenants not to compete, which also bind Solve, cover a wider geographical area and run for terms of three or ten years depending on the locality, are similarly subject to the infirmity that they are with the Delaware corporation controlled by the signatories.

We have no reason to consider whether an additional basis might be furnished by the possibility that under the allegations of the complaint the minority shareholders in the Delaware corporation, even though not named as defendants, may be established to have either acted in concert with the accused defendants or otherwise to have acquired unclean hands so as to bring into play the doctrine of Perlman v. Feldmann, 219 F.2d 173, 50 A.L.R.2d 1134 (2d Cir.), cert. denied 349 U.S. 952, 75 S.Ct. 880, 99 L.Ed. 1277 (1955), on remand 154 F.Supp. 436 (D.Conn.1957), in the fashioning of relief. If such a showing is made on trial, the trial court may consider whether this calls for the construction of a similar theory of recovery solely for the benefit of innocent shares.

■ For all these reasons we think it error to dismiss the action as to the individuals at this stage of the proceedings, and therefore we reverse and remand for their reinstatement.

To recapitulate, assuming that concealment sufficient to toll the statute of limitations is established, pre-1955 claims may be sued on by the individual partners so far as not assigned at all or so far as transferred to the New Jersey and Delaware corporations and by them assigned to the individual plaintiffs. The claims for the period of operation of the New Jersey corporations may be sued on by the individual plaintiffs if reserved to them in the merger with the Delaware corporation or assigned by it subsequent to the merger.

■ We decline, however, to resort to the extraordinary remedy of mandamus to require the court to permit the "prettifying" of the pleadings by the filing of the proposed second consolidated amended complaint. We are not inclined to attempt to interfere to oversee the step by step pleading progress of the parties once the amendments as of right under Fed.R.Civ.P. 15(a) have been exhausted. No appeal lies from the order denying permission to amend in the absence of certification, and "Possible error in allowing or denying an amendment is not normally reviewable by mandamus or other extraordinary writ; the remedy is by way of appeal when a final judgment has been entered." 3 Moore Federal Practice ¶ 15.12, at 973 (2d ed. 1966). See DeNubilo v. United States, 343 F.2d 455 (2d Cir. 1965); Wolfson v. Blumberg, 340 F.2d 89 (2d Cir. 1965); 6 Moore Federal Practice 54.12 [1], at 117 (2d ed. 1965). Piecemeal review except in the instances specifically provided for in 28 U.S.C. § 1292(b) and Rule 54(b) is not favored. Switzerland Cheese Association, Inc. et al. v. E. Horne's Market, 385 U.S. 23, 24, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966); Chappel & Co., Inc. v. Frankel, 367 F.2d 197 (2d Cir. 1966). Of course, error in refusing an amendment would be open to review on appeal from a final judg-

ment. It is clear also that the judge is free to reconsider the request for amendment if he sees fit in the light of this opinion.

Finally, we cannot conceive that we would ever mandamus a district judge to certify an appeal under 28 U.S.C. § 1292(b) in plain violation of the Congressional purpose that such appeals should be heard only when both the courts concerned so desire.