Barbara Cantwell CHRISTMAN, et al., Plaintiffs,

v.

AMERICAN CYANAMID COMPANY, Defendant.

Civ. A. No. 80–0024–P(H).

United States District Court,
N. D. West Virginia,
Parkersburg Division.

Nov. 17, 1981.

Ronald S. Cooper, Steptoe & Johnson, Washington, D. C., Willis O. Shay, Steptoe & Johnson, Clarksburg, W. Va., for defendant.

John E. Bertin, Judith Levin, Isabelle Katz Pinzler, American Civil Liberties Union Foundation, Geoffrey M. Kalmus, Susan C. Ervin, Kramer, Levin, Nessen, Kamin & Soll, New York City and David G. Hanlon, Harrisville, W. Va., for individual plaintiffs.

Robert E. Wages, Asst. Gen. Counsel, Denver, Colo. and Franklin D. Cleckley, Morgantown, W. Va., for Oil Chemical & Atomic Workers Intern. Union.

## MEMORANDUM OPINION AND ORDER

HADEN, District Judge.

This action is brought under Title VII of the Civil Rights Act of 1964[1] to redress sex discrimination allegedly practiced by the Defendant, American Cyanamid, in its employment and hiring policies for the production and maintenance work force at its plant in Willow Island, West Virginia.[2] Plaintiffs seek both injunctive and monetary relief.

Deborah Kay Nicely and Linda Huggins move this Court, pursuant to Rule 23(a) and Rule 23(b), Federal Rules of Civil Procedure, for a preliminary determination that this action may be maintained as a class action. Nicely and Huggins seek to represent a class of past, present and future applicants and deterred applicants. Following the submission of Memoranda on this issue, the Court held a hearing on October 26, 1981. At the close of the hearing, this Court took Plaintiffs' motion under advisement and now issues this Memorandum Opinion and Order.

## I. CLASS ALLEGATIONS

Plaintiffs allege that prior to 1974, Cyanamid hired no women for production and maintenance positions at its Willow Island Plant. Plaintiffs further allege that Cyanamid has discouraged women from seeking production and maintenance positions.

 Nicely and Huggins allege that they have been active applicants for employment in Defendant's Willow Island production and maintenance work force since 1975 and 1978 respectively.[3] Though they allege that they meet all the requirements,[4] neither have ever obtained production or maintenance employment at Cyanamid's Willow Island Plant.

In the fall of 1977, Cyanamid implemented a medical protection policy whereby women of child-bearing capacity[5] were not employed in those production departments where they would be exposed to certain substances at levels thought to be harmful to the fetus. When the medical protection policy was implemented, these substances were used in most of the production departments at Willow Island. In October, 1978, the medical protection policy's application at Willow Island was limited to the pigments department.[6] Though implementation of the medical protection policy was announced to incumbent employees in late January or early February of 1978, Nicely and Huggins allege that they and the class of applicants which they seek to represent were never notified of the medical protection policy's implementation.

1. 42 U.S.C. §§ 2000e through 2000e–17.

2. This Court has original jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 2000e–5(f).

3. Cyanamid's records indicate that Nicely first applied on March 13, 1978, and again on January 14, 1980. The Company's records also indicate that Huggins first applied on December 1, 1978, and again on January 26, 1980. White Affidavit ¶ 13 and 14.

 For the purposes of a Rule 23 class motion, this Court must assume the merits of Nicely's and Huggins' allegations and then determine if the Rule 23 and the Article III standing prerequisites have been satisfied. *See Doctor v. Seaboard Coastline Railroad Co.*, 540 F.2d 699, 708–9 (4th Cir. 1976). Accordingly, the factual variance as to when Nicely first applied for production and maintenance employment must

be resolved in her favor at this stage of the proceedings.

4. Cyanamid has stated that its requirements for entry level production and maintenance positions at Willow Island, "are the ability to do manual labor and to move up to higher-rated jobs." *See Defendant, American Cyanamid Company's First Supplemental Responses to Plaintiffs' First Interrogatories at 8.*

5. "Women of child-bearing capacity" was a term used in the industry to include women between the ages of 16 through 55. *See* Robert M. Cline, M.D.'s Memo to Division Presidents dated August 5, 1976, attached to Bertin's Affidavit as Exhibit D; filed October 20, 1981.

6. The pigments department was eventually closed in January, 1980.

Plaintiffs also allege that the Company has a reputation in the community for discriminating against women in its employment of production and maintenance workers and that this reputation has deterred qualified women from applying for such jobs.

On January 28, 1980, Nicely filed a complaint with the West Virginia Human Rights Commission [hereinafter WVHRC] alleging that Cyanamid had discriminated against her on account of her sex. Nicely's complaint, which alleged a pattern and practice of sex discrimination, was directed against Cyanamid's hiring policy for its Willow Island Plant. The WVHRC referred Nicely's complaint to the EEOC the same day, January 28, 1980. Huggins filed a similar complaint with the WVHRC on February 5, 1980. The WVHRC referred Huggins' complaint to the EEOC on February 22, 1980. Linda Moore filed a complaint with the WVHRC on February 11, 1978. Moore was an incumbent production employee when she filed her complaint with the EEOC on February 13, 1979.

## II. CLASS ACTION PREREQUISITES

This Court must make seven affirmative findings before it can grant Plaintiffs' motion to certify a class action pursuant to Rule 23, Federal Rules of Civil Procedure.[7] Two of these prerequisites are not expressly stated in Rule 23, but rather have been developed by the courts. Four prerequisites are set out in Rule 23(a). Finally, the action must fall within one of the three categories of class actions described in Rule 23(b)—in this instance, Rule 23(b)(2).

■ (1) *There must be a class.* To this end, the Plaintiffs must provide an intelligible description of a cohesive class. While it is not necessary that the Plaintiffs be able to identify each and every member of the

class, the Court must have enough information to ascertain whose claims will be adjudicated by the class action. Accordingly, the Court must be confident that it will be able to identify class members with relative ease once a judgment is entered or a settlement is approved.

Plaintiffs argue that the class should be defined as, "All past, present, and future, and deterred women applicants denied employment in the production and maintenance work force at the American Cyanamid Company's Plant in Willow Island, West Virginia, solely because of their sex, in violation of Title VII of the Civil Rights Act of 1974." Under this proposed definition, there would be no cut-off date for class membership other than the effective date of Title VII. Alternatively, Plaintiffs would have this Court set April 19, 1977,[8] as the cut-off date for class membership. On the other hand, Defendant argues that if a class is to be certified, it should be defined as, "All women with pending applications who claim they were denied entry-level positions available in the production and maintenance work force at [Cyanamid's Willow Island Plant] between April 3, 1979, and July 10, 1979, solely because of their sex."

Since none of these proposed definitions of the class are entirely appropriate, this Court will adopt its own.

A. *Continuing Violation Theory's Effect on the 300-day Statute of Limitation.*

■ Before an action can be brought under Title VII, two jurisdictional requirements must be satisfied. First, the plaintiff must have filed a timely charge with the EEOC. Second, the plaintiff must have received a right to sue letter from the EEOC and acted upon it to file suit within 90 days.[9] When a class action is brought

---

7. Miller, *An Overview of Federal Class Actions: Past, Present, and Future,* Federal Judicial Center Publication No. 77–8 (1977), *cited with approval in Sheldon v. Pargo, Inc.,* 582 F.2d 1298, 1313 (4th Cir. 1978).

8. April 19, 1977, is 300 days before Linda Moore filed a complaint with the EEOC.

9. 42 U.S.C. § 2000e–5(e). *See also: Alexander v. Gardner Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *Movement for Opportunity v. General Motors,* 622 F.2d 1235, 1240 (7th Cir. 1980).

under Title VII, not all class members need file EEOC charges before they can share in any class relief which might be afforded.[10] This is not to say, however, that a class action can revive Title VII claims which were no longer viable when a class member first filed a complaint with the EEOC.[11]

■■■■ Rule 23 does not suspend application of Title VII's jurisdictional requirements. Rather, this Court must define class membership with these jurisdictional limitations in mind. Therefore, before an applicant or deterred applicant[12] will be eligible to participate in any class relief, she will have to prove that she was discriminated against within a period commencing 300 days[13] before a class member first filed a complaint with the EEOC.

The Plaintiffs argue, however, that their allegations of a continuing violation of Title VII makes the 300-day limitation inapposite. Plaintiffs take the position that class membership should extend backwards in time to July 2, 1965, the effective date of Title VII.[14] Cyanamid vigorously disagrees with Plaintiffs' interpretation of the law.

This Court's analysis of Plaintiffs' continuing violation theory must begin with the Supreme Court's decision in *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). In that case, a female flight attendant filed an EEOC complaint in February, 1973, after United refused to credit her with seniority for the time she was employed prior to her dismiss-

al in 1968 and subsequent reinstatement in February, 1972. Evans argued that her EEOC complaint was timely since United was guilty of a continuing violation of Title VII. In rejecting her argument, the Supreme Court stated:

> A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the Statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.
>
> Respondent emphasizes the fact that she has alleged a *continuing* violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuities; the critical question is whether any present *violation* exists. She has not alleged that the system discriminates against former female employees or that it treats former employees who were discharged for a disciplinary reason any differently from former employees who resigned or were discharged for a non-discriminatory reason. In short, the system is neutral in its operation.

*Id.* at 558, 97 S.Ct. at 1889.

The Fourth Circuit, however, has repeatedly distinguished *Evans* on the basis

---

10. *Brown, et al. v. Eckerd Drug Inc., et al.*, 663 F.2d 1268 at 1278 n. 12 (4th Cir. 1981). *See also Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 720 (3rd Cir. 1969). *See generally: Albermale Paper Co. v. Moody*, 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 2370 n. 8, 45 L.Ed.2d 280 (1975).

11. *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 (D.C.Cir.1976); *Inda v. United Airlines, Inc.*, 83 F.R.D. 1, 7 (N.D.Cal.1979).

12. This Court disagrees with the District Court's refusal to certify deterred applicants as class members in *Morris v. City of Pittsburgh*, 82 F.R.D. 74, 76 (W.D.Pa.1977). Despite the difficulty which deterred applicants may have in establishing their right to relief, they cannot be denied the opportunity to participate in any class relief which might be afforded. *See Teamsters v. United States*, 431 U.S. 324, 364–

66, 97 S.Ct. 1843, 1869–70, 52 L.Ed.2d 396 (1977); *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n.*, 374 F.2d 647, 653 n. 9 (4th Cir. 1967).

13. *See e. g. Hubbard v. Rubbermaid, Inc.*, 78 F.R.D. 631, 644 (D.Md.1978).

14. In support of this proposition, Plaintiffs cite *Ass'n. of Flight Attendants v. Texas International Airlines*, 89 F.R.D. 52, 60 (S.D.Tex.1981); and *Cooper v. University of Texas at Dallas*, 482 F.Supp. 187, 190 (N.D.Tex.1979). *Briggs v. Brown & Williamson Tobacco Co.*, 414 F.Supp. 371, 378 (E.D.Va.1976), also supports the Plaintiffs position. For the reasons set out below, this Court finds that these decisions are unpersuasive.

that *Evans* did not involve a "truly" continuing violation.[15] In *Patterson v. American Tobacco Co., supra* n. 15, for example, the Court stated:

> In *Evans* the Court specifically rejected the employee's claim that the failure to accord her retroactive seniority benefits constituted a 'continuing violation' that was not time-barred. Rejection was on the basis that the seniority system itself was not charged or proven to constitute an *existing* violation of the claimant's rights to nondiscriminatory conditions of employment. In the instant case, by contrast, the violations charged and found by the district court were 'continuing' in the very sense not present in *Evans*. Here the promotional policies adopted in 1968 were alleged by the claimants, found by the district court, and affirmed by this court to involve a continuing pattern or practice of discrimination that locked black and women employees into less *favorable* job positions. These effects, unlike the denial to the *Evans* claimant of retroactive seniority benefits, constitute truly 'continuing' violations of Title VII. Hence, claims related to these violations are not barred by failure to have challenged at its inception the policy which gave continuing raise to them.

634 F.2d at 751. In the Fourth Circuit, therefore, a "truly continuing violation" is a *present* violation within the context of *Evans*. Naturally, the term "present" must be defined in light of Title VII's jurisdictional requirements.[16]

■ In a "deferral" state, such as West Virginia,[17] an individual has 300 days from the commission of an alleged discriminatory act to file a complaint with the EEOC.[18] If an individual waits longer than 300 days to file an EEOC charge, the Federal Courts have no jurisdiction under Title VII to adjudicate her claim. As a result, this Court cannot certify a class of applicants and deterred applicants which would include individuals who only allege that they were discriminated against more than 300 days before a class member first filed a complaint with the EEOC.

■ The continuing violation theory which Plaintiffs advance, and which the Fourth Circuit has accepted,[19] does not suspend Title VII's jurisdictional requirements. Rather, this Court can adjudicate class claims which arose out of a discriminatory policy implemented more than 300 days before a class member first filed an EEOC charge only if that policy continued to discriminate against class members within the 300 day jurisdictional period.[20] According-

15. *Kim, et al. v. Coppin State College, et al.,* 662 F.2d 1055 at 1061 (4th Cir. 1981); *Jenkins v. Home Insurance Co.,* 635 F.2d 310 (4th Cir. 1980); *Patterson v. American Tobacco Co.,* 586 F.2d 304–05 (4th Cir. 1978), *after remand* 634 F.2d 744, 750–51 (4th Cir. 1980), *cert. granted* —— U.S. ——, 101 S.Ct. 3078, 69 L.Ed.2d 951 (1981).

*See also: Roberts v. North American Rockwell Corp.,* 650 F.2d 823, 827 (6th Cir. 1981) ("*Evans* cannot apply in a case such as this, involving hiring, since each time the company hires, it violates Title VII so long as its discriminatory policy is in effect.").

16. *Accord McDonald v. United Air Lines, Inc.,* 587 F.2d 357 (7th Cir. 1978), *rehearing denied* 444 U.S. 890, 100 S.Ct. 196, 62 L.Ed.2d 127 (1979).

17. *See* W.Va. Code, Chapter 5, Article 11, Sections 8, 10 & 11.

18. 42 U.S.C. § 2000e–5(e).

19. *Supra* n. 15.

20. As a general matter, the mere continuation of a discriminatory act's effect, when the act itself occurred prior to the pertinent limitations period, is not sufficient to support recovery under Title VII. *United Air Lines, Inc. v. Evans, supra,* 431 U.S. at 558, 97 S.Ct. at 1889. *See also Delaware State College v. Ricks,* [449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431] . . . 1980. The act which constitutes the violation must be 'still fresh' within the statutory period. *Egelston v. State University College,* 535 F.2d 752, 755 (2nd Cir. 1976).

\* . \* \* \* \* \*

Where, however, the defendant has engaged in a continuous policy of discrimination, acts in furtherance of that policy are not viewed in isolation. In such circumstances if the charge has been filed no later than 300 days after the *last* act by the defendant pursuant to its policy, the plaintiff may recover for earlier acts of discrimination as well. . . . "To succeed at trial, the [plaintiffs] must be able to demonstrate a Title VII violation oc-

ly, an applicant or deterred applicant who claims that she was discriminated against by Cyanamid's alleged continuing violation of Title VII can share in class relief, only if she can prove that the alleged continuing violation discriminated against her within 300 days before a class member first filed an EEOC charge.

## B. *Cut-Off Date for Class Membership*

The record indicates that Deborah Kay Nicely was the first class representative to file an EEOC complaint alleging discriminatory hiring practices at the Willow Island Plant. Nicely filed an EEOC complaint on January 28, 1980. Counting 300 days backwards from January 28, 1980, would set the cut-off date for eligibility to participate in class relief at April 3, 1979. Jurisdiction clearly exists, therefore, as of April 3, 1979.

Plaintiffs argue, however, that at a minimum the Court should adopt April 19, 1977, as the appropriate cut-off date. This proposed date is 300 days before Linda Moore, a Cyanamid employee, filed an EEOC complaint on February 13, 1978.

■ The cut-off date for eligibility to participate in class relief can be based on the earliest EEOC filing date of any class member.[21] However, it is apparent that Moore, an employee, is not a member of the class of applicants and deterred applicants.[22] Accordingly, Moore's complaint cannot be said to have tolled the statute of

limitations by virtue of her class membership.

■ Plaintiffs do argue, however, that a liberal reading of Moore's EEOC charge indicates that Cyanamid was put on notice that its hiring policy was being challenged and that such notice effectively tolled the statute of limitations. However, this argument is unpersuasive. A liberal reading of Moore's EEOC charge indicates that she only complained of employment discrimination. Plaintiffs point out that Moore complained of a "pattern and practice of sex discrimination in [Cyanamid's] employment policies and practices" and that this language should be read to include hiring discrimination. However, even when giving Moore's complaint the most liberal reading permissible, this Court finds that Moore's EEOC complaint did not give Cyanamid adequate notice that its hiring policy was being challenged.

■ Alternatively, Plaintiffs argue that if Moore's charge did not adequately notify Cyanamid that its hiring policy was being challenged, the ensuing EEOC investigation did. In support of this argument, Plaintiffs cite *Ostapowitz v. Johnson*, 541 F.2d 394 (3rd Cir. 1976) and *EEOC v. General Electric Co.*, 532 F.2d 359 (4th Cir. 1976). Plaintiffs reliance on these decisions, however, is misplaced.[23]

---

curring after the effective date of the act and within the period of the statute of limitation, or 300 day charge-filing period. But such a violation is not limited to hiring violations per se.

A continuously maintained illegal employment policy may be the subject of a valid complaint until a specified number of days after the *last occurrence* of an instance of that policy.... Furthermore, where an illegal policy is so maintained, relief for injury sustained even before the beginning of the limitations is appropriate." [However, back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. 42 U.S.C. § 2000e–5(g).]

*Ass'n. Against Discrimination v. City of Bridgeport*, 647 F.2d 256, 274 (2nd Cir. 1981), *quoting Acha v. Beame*, 570 F.2d 57, 65 (2nd Cir. 1978).

*See also*: Cases cited at n. 15 *supra*.

21. *McDonald v. United Air Lines, Inc.*, 587 F.2d 357, 361 (7th Cir. 1978); *Williamson v. Bethlehem Steel Corp.*, 488 F.Supp. 827, 834–35, (W.D.N.Y.1980). *Accord International Woodworkers of America v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259 at 1271 n. 20 (4th Cir. Sept. 17, 1981). *See generally Inda v. United Air Lines, Inc.*, 83 F.R.D. 1, 7–10 (N.D. Cal.1979).

22. *Hill v. Western Electric Co., Inc.*, 596 F.2d 99, 102 (4th Cir. 1979).

23. The Fourth Circuit's decision in *EEOC v. General Electric Co.*, is inapposite, since actions which are brought by the Commission to vindicate public interest are broader in scope than those brought by private litigants. *EEOC v. General Electric Co., supra* at 373.

In *Ostapowitz*, the Third Circuit held that a female employee in the defendant's machine shop division could bring a civil action relying on an earlier EEOC charge filed by the union. The union's charge only complained of sex discrimination in defendant's shipping department. In that case, however, both Ostapowitz's and the union's charges "alleg[ed] specific instances of the same form of sex discrimination by the same employer." This led the *Ostapowitz* court to conclude that, "The additional charges filed during the pendency of the administrative procedures may fairly be considered explanations of the original charge and growing out of it." *Ostapowitz v. Johnson, supra* at 399. In the case at bar, however, Nicely's charge which pertained to hiring discrimination cannot be fairly characterized as an "explanation" of Moore's charge which pertained to employment discrimination. As a result, *Ostapowitz* is distinguishable from the case at bar.

Accordingly, this Court declines to adopt April 19, 1978, as the appropriate jurisdictional cut-off date. Rather, this Court holds that only those applicants and deterred applicants who can prove that Cyanamid discriminated against them on the basis of their sex, on or after April 3, 1979, will be eligible to participate in any class relief which might be forthcoming in this action. However, if it is subsequently shown that a class member filed an EEOC charge before Nicely, the jurisdictional cut-off date may be extended backwards at that time.[24]

### C. *Defendant's Affirmative Defenses*

■ Cyanamid argues that class membership should be limited to those applicants who claim that they were discriminated against on the basis of their sex, between April 3, 1979, and July 10, 1979, and who further had applications pending during that interval. Cyanamid argues that post-July 10, 1979, applicants could not have

been discriminated against on the basis of their sex, since as of that date no production and maintenance employees have been hired at Willow Island for economic reasons. Cyanamid also argues that only those applicants whose applications were actually pending between April 3, 1979, and July 10, 1979, should be included within the class, since Cyanamid followed a discard procedure for dated employment applications.[25] It is apparent, however, that these arguments constitute affirmative defenses which this Court cannot properly consider at this stage of the action. Accordingly, this Court will neither exclude post-July 10, 1979, applicants from the class, nor limit the class to those applicants whose applications were on file as of April 3, 1979. *See Doctor v. Seaboard Coastline Railroad Co., supra* at 708–9.

### D. *Definition of the Class*

For the reasons set out above, therefore, this Court holds that the class which Nicely and Huggins are eligible to represent is appropriately defined as: All past and present women applicants who claim they were denied employment in the production and maintenance work force at American Cyanamid's Willow Island Plant after April 3, 1979, on account of their sex: Provided the class will also include all women who claim they were deterred from applying for production and maintenance positions at Defendant's Willow Island Plant after April 3, 1979, on account of the Defendant's alleged reputation in the community for discriminating against women applicants.

■ (2) *The class representatives must be members of the class.* Nicely and Huggins allege that they have been active applicants for production and maintenance positions at Cyanamid's Willow Island Plant since 1975 and 1978 respectively. They allege that they have never obtained production and maintenance jobs at the Willow Island Plant despite meeting all of Cyanam-

---

**24.** *Supra* n. 21.

**25.** White Affidavit ¶ 11–12. Plaintiffs counter this latter argument with the allegation that

Cyanamid never informed applicants of its application discard policy. *See Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

id's requirements for such positions. Both claim that they were discriminatorily denied this sought after employment on account of their sex. Accordingly, this Court finds that Nicely and Huggins are members of the class of applicants and deterred applicants which they seek to represent.

■ (3) *Rule 23(a)(1) requires that the class be so numerous that the joinder of all members is impracticable.* To satisfy this requirement, the joinder of all class members must only be impracticable. It need not be impossible. Impracticality of joinder is not determined by a numerical test alone. *Ballard v. Blue Shield of Southern West Virginia, Inc.,* 543 F.2d 1075, 1080 (4th Cir. 1976), *cert. denied* 430 U.S. 922, 97 S.Ct. 1341, 51 L.Ed.2d 601 (1977). Among the pertinent factors to be considered when determining whether the joinder of all class members is impracticable are: the estimated size of the class, the geographic diversity of class members, the difficulty of identifying class members, and the negative impact of judicial economy if individual suits were required. *See e. g. Horn v. Associated Wholesale Grocers, Inc.,* 555 F.2d 270, 275–76 (10th Cir. 1977).

■ Since 1979, 273 women have submitted applications for production and maintenance positions at Cyanamid's Willow Island Plant. Furthermore, it can only be assumed that deterred applicants[26] will increase the size of the class. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n., supra* at 653 n. 9. While Plaintiffs have done no more than speculate on the class members geographic diversity, the negative impact upon judicial economy is all too apparent should individual suits be required.

"Cyanamid does not dispute that the putative class is sufficiently numerous...."[27] This Court is inclined to agree. Accordingly, this Court holds that the putative class is sufficiently numerous to make the joinder of all class members impracticable.

■ (4) *Rule 23(a)(2) requires that the action raise questions of law or fact common to the class.* The class aspect of this action involves alleged sex discrimination in one type of employer activity, hiring, for one type of job, entry level production and maintenance positions, at one plant. This common factual question will be dispositive as to Defendant's liability to the class, notwithstanding factual variances which might be relevant to an individual class member's eligibility to participate in class relief. *Slege v. J. P. Stevens & Co.,* 585 F.2d 625, 637 (4th Cir. 1978), *cert. denied* 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979). This Court holds, therefore, that the common factual questions relating to Defendant's alleged pattern and practice of sexual discrimination at its Willow Island Plant clearly satisfies Rule 23(a)(2).

■ (5) *Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of those of the class.* The class which Nicely and Huggins seek to represent has been narrowly defined to include only past and present women applicants and deterred applicants for production and maintenance positions at Cyanamid's Willow Island Plant who claim that they were sexually discriminated against on or after April 3, 1979. Nicely and Huggins allege that they were denied production and maintenance employment at the Willow Island Plant on account of their sex. Cyanamid concedes that Nicely's and Huggins' claims are typical of other rejected applicants whose applications were "pending" on or after April 3, 1979. Cyanamid contends, however, that the class representative's claims are not typical of the claims of earlier rejected applicants or of deterred applicants.

Rule 23(a)(3) only requires that the representatives' claims are typical of the other class members' claims. The Rule does not

---

26. Many deterred applicants who cannot be identified at present may nonetheless be entitled to relief. *Supra* n. 12.

27. Defendant's Memorandum in Opposition to Class Certification at 16, filed Oct. 1, 1981.

require that they be identical.[28] The sex discrimination allegedly suffered by applicants and deterred applicants are tied together by an alleged pattern and practice of discrimination which was allegedly known throughout the community. This Court finds, therefore, that Nicely's and Huggins' claims are typical of the claims of deterred applicants.

As determined earlier, this Court will not limit the class to those applicants whose applications were "pending" on or after April 3, 1979. To conclude otherwise would require the Court to credit the Defendant's application discard policy. However, this Court cannot appropriately consider such an affirmative defense at this stage of the proceedings. *See Doctor v. Seaboard Coastline Railroad Co., supra* at 708–9.

Accordingly, this Court holds that Nicely's and Huggins' claims are typical of the claims of all past and present women applicants and deterred applicants for production and maintenance positions at Defendant's Willow Island Plant who allege that Cyanamid's hiring practices sexually discriminated against them on or after April 3, 1979.

■ (6) *Rule 23(a)(4) requires a showing that the representative parties will fairly and adequately represent the interest of the class.* The class action represents an exception to the fundamental due process requirement that an individual is entitled to his day in Court. The justification for this exception, whereby a judgment can be entered or a settlement approved which will bind all members of a defined class, is that each class member is vicariously afforded his day in Court.[29] If the interests of the class are not adequately represented, the class members cannot be bound by any judgment or settlement which results from the class action. Rather, the resulting judgment or settlement would be vulnerable to collateral attacks by unrepresented class members.[30] Such a result would further strain limited judicial resources, thereby defeating the entire purpose for a class action in the first instance.

When assessing the class representatives' ability to adequately represent the interests of the class, this Court must consider the abilities of both the attorneys who represent the class representatives, and the class representatives themselves.[31] Cyanamid does not contest that Nicely and Huggins are represented by experienced and qualified counsel who possess both the ability and the resources needed to vigorously pursue this litigation. Cyanamid contends, however, that Nicely and Huggins cannot adequately represent the interests of the class. Defendant reasons that Nicely's and

**28.** When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment. *Brown, et al. v. Eckerd Drugs, Inc., et al.* 663 F.2d 1268 at 1275 (4th Cir. 1981). *See also Gonzales v. Cassidy,* 474 F.2d 67 (5th Cir. 1973).

**29.** The class suit was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impracticable. Courts are not infrequently called upon to proceed with causes in which the number of those interested in the litigation is so great as to make difficult or impossible the joinder of all because some are not within the jurisdiction or because their whereabouts is unknown or where if all were made parties to the suit its continued abatement by the death of some would prevent or unduly delay a decree. In such cases where the interest of those not joined are of the same class as the interest of those who are, and where it is considered that the latter fairly represent the former in the prosecution of the litigation of the issues in which all have a common interest, the court will proceed to a decree. *Hansberry v. Lee,* 311 U.S. 32, 41–42, 61 S.Ct. 115, 117–18, 85 L.Ed. 22 (1940).

**30.** [A] judgment in a class action will bind the absent members of the class. The exception to this general rule is grounded in due process. Due process of law would be violated for a judgment in a class suit to be *res judicata* to the absent members of a class unless the court applying *res judicata* can conclude that the class was adequately represented in the first suit. *Gonzales v. Cassidy, supra* at 74.

**31.** *See e. g. Ass'n. of Flight Attendants v. Texas International Airlines,* 89 F.R.D. 52, 61 (S.D. Tex.1981).

Huggins' interests are antagonistic to the interests of the class, since any relief would involve allocation of the limited number of job vacancies allegedly denied class members on the basis of their sex. Therefore, the adequate representation of deterred applicants might mean that they would obtain individual relief ahead of, or possibly even instead of, Nicely and Huggins. Accordingly, Cyanamid asserts that the class representatives only have disincentives to build a strong case for the class of applicants and deterred applicants.

■ Defendant's argument is unconvincing, however, since it is premature and speculative. At this stage of the proceedings,[32] this Court is convinced that both the class representatives and their attorneys, who have vigorously prosecuted this action up to now, will adequately represent the interests of the class.

■ (7) *Rule 23(b)(2) authorizes class actions for injunctive or declaratory relief with respect to the class as a whole when the party opposing the class has acted or refused to act on grounds generally applicable to the class.* Two basic factors must be present before a class action can be maintained under this subdivision.[33] First, the defendant's conduct must be generally applicable to the class. This element is satisfied so long as the defendant's actions affect all persons similarly situated.[34] Second, injunctive relief must have been requested *for the class.*

■ Class representatives, Nicely and Huggins, have alleged that Cyanamid is guilty of a general pattern and practice of sex discrimination vis a vis its hiring policy for production and maintenance positions at the Willow Island Plant. This Court finds that this alleged conduct is "generally applicable" to the class of applicants and deterred applicants which Nicely and Huggins seek to represent. Furthermore, Plaintiffs have requested that this Court "[e]njoin defendant from discriminating against women applicants at the Willow Island facility, and order defendant to engage in such affirmative relief with respect to the class as is necessary to redress classwide injuries." [35] Accordingly, this Court holds that the class representatives have satisfied the requirements of Rule 23(b)(2).

## III. STANDING

[T]o have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the *same interest* and suffer the *same injury* shared by all members of the class that he represents.

*Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 217, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974). *See also East Texas Motor Freight v. Rodrigues,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (*Schlesinger* held applicable to Title VII class actions.)

■ In the case at bar, Nicely and Huggins seek to represent a class of applicants and deterred applicants. As applicants themselves, these class representatives share with the class a common interest in equal employment opportunity. Furthermore, if Plaintiffs' allegations of sex discrimination prove to be true, Nicely and Huggins suffered the same injury which the class of applicants and deterred applicants were subjected to. Accordingly, this Court finds that Nicely and Huggins have

---

**32.** When Plaintiffs move for class certification, the Court must determine whether class interests will be adequately represented. If a class is certified, the Court has an ongoing responsibility to monitor the quality of the representation to make certain that it remains adequate up to the ultimate termination of the action.

**33.** 7A Wright & Miller, *Federal Practice and Procedure* § 1775.

**34.** The defendant need not have acted directly against each member of the class. *Paxman v. Campbell,* 612 F.2d 848, 854 (4th Cir. 1980). *See also Hess v. Hughes,* 500 F.Supp. 1054, 1061–62 (D.Md.1980).

**35.** Second Amended Complaint ¶ VII(2)(g).

standing to represent a class of applicants and deterred applicants.[36]

## IV. ORDER

Having found that the class representatives, Nicely and Huggins, satisfy the Article III standing requirement, Title VII's jurisdictional requirements, and the requirements of Rule 23(a) & (b)(2), Federal Rules of Civil Procedure, this Court hereby grants Plaintiffs' motion for class certification. This Court further ORDERS that the class which Nicely and Huggins are certified to represent shall be defined as: All past and present women applicants who claim they were denied employment in the production and maintenance work force at American Cyanamid's Willow Island Plant after April 3, 1979, on account of their sex; Provided the class will also include all women who claim that they were deterred from applying for production and maintenance positions at Defendant's Willow Island Plant after April 3, 1979, on account of the Defendant's alleged reputation in the community for discriminating against women applicants.

---

**36.** Notwithstanding the possible conflicts which might arise when the evidentiary hearing is held, this Court finds that the claims of applicants and deterred applicants are so similar in nature that Nicely and Huggins have standing to represent a class which includes both applicants and deterred applicants. *Cf. Brown v. Eckerd Drugs, Inc.,* 663 F.2d 1268 (4th Cir. 1981); *Abron v. Black & Decker, Inc.,* 654 F.2d 951 (4th Cir. 1981); *Hill v. Western Electric Co., Inc.,* 596 F.2d 99 (4th Cir. 1979).