Dolores E. BURKETT, individually and as a class representative for certain unnamed persons, Plaintiffs,

v.

UNITED STATES POSTAL SERVICE, Defendant.

No. CIV. A. 3:96–CV–34.

United States District Court, N.D. West Virginia, Martinsbury Division.

Aug. 15, 1997.

David M. Hammer, Harry P. Waddell, Matinsburg, WV, for Plaintiffs.

Helen C. Altmeyer, Wheeling, WV, Karla J. de Steuben, Elaine Rombery, Lynn D. Poole, Lawrence D. Rosenberg, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

BROADWATER, District Judge.

### I. *Introduction*

This matter comes before the Court on plaintiff Dolores Burkett's motion to certify class pursuant to Fed.R.Civ.P. 23. For the reasons set forth below, the Court finds that the motion should be denied.

### II. *Procedural History*

On or about May 8, 1996, plaintiff filed a Class Complaint on behalf of herself and a group of unnamed individuals who, beginning in 1995, were denied employment for medical reasons at defendant's Remote Encoding Center in Martinsburg, West Virginia. In the complaint, plaintiff specifically alleges that defendant's refusal to hire her, and by implication the other members of the proposed class, constitutes unlawful handicap discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C.A. § 701 *et seq.* (West 1985 & Supp.1997).

On November 15, 1996, defendant filed a motion to strike plaintiff's class allegations. By Order dated January 24, 1997, the Court

denied this motion and permitted plaintiff to go forward with limited class discovery. On April 18, 1997, plaintiff filed her motion for class certification. After having fully briefed the matter, the parties presented oral argument on plaintiff's motion at a hearing on June 17, 1997.

### III. *Factual Background*

Prior to the spring of 1995, plaintiff (hereinafter "Burkett") worked as a data conversion operator for Advanced Management, Inc. (hereinafter "AMI"), a private contractor that provided mail bar coding services for defendant (hereinafter "Postal Service") at a facility in Falling Waters, West Virginia. As a data conversion operator, Burkett viewed images of incoming mail on a computer monitor and then used a keyboard to enter the displayed address into the computer so that the address could be bar coded.

AMI's initial two-year contract, which ran from June 1993 through May 1995, provided the Postal Service with a renewal option. Pursuant to an agreement with the American Postal Workers Union, the Postal Service elected to bring its bar coding operation in-house and, therefore, did not renew its agreement with AMI. Nevertheless, in the spring of 1995, the AMI data conversion operators were informed that they could, upon the satisfaction of certain personal and medical suitability requirements, continue in this capacity as employees of the Postal Service.

Burkett, other former AMI data conversion operators, and non-AMI workers applied for employment. She and at least fourteen of these individuals passed the necessary background check, suitability check and drug screen, and were sent for a medical examination by a local contract physician.[1] As part of the evaluation process, the applicants were instructed to fill out a Medical Examination and Assessment Form (hereinafter "Form

2485")[2] and to bring the completed form to the examination. The contract physicians then reviewed the individual Form 2485s, conducted a physical examination of each applicant, and made an assessment of the applicant's risk of incurring a job-related injury or illness due to existing or past medical conditions. Without exception, Burkett and the other applicants were judged to be medically qualified for the position of data conversion operator.

Following the contract physician examinations, the Form 2485s were sent to Kelley Moore, the Occupational Health Nurse Administrator for the Postal Service's Appalachian District. Nurse Moore in turn forwarded the forms of the fifteen applicants to Dr. J. William Comer, the Associate Area Medical Director, who made his own risk assessment for each individual. In making this determination, Dr. Comer did not physically examine any of the applicants, but, instead, based his assessment upon the information contained in their medical records and his personal knowledge of the functions and duties of a data conversion operator.[3] Upon conducting his review, Dr. Comer concluded that each of the applicants was medically unqualified for employment and/or posed a high risk of suffering an injury or exacerbating a preexisting condition.

Thereafter, the results of Dr. Comer's evaluations were forwarded to the Postal Service hiring official, Susan Cocci. Ms. Cocci—and Elma DiMona, who replaced Cocci in July 1995—then made the final hiring decisions. The former testified that she and Dr. Comer were jointly responsible for deciding whether an at risk applicant could be accommodated. Nevertheless, Ms. Cocci admitted that when Dr. Comer classified an individual as high risk she would defer to this decision and not independently determine if accommodation was possible.

---

1. Under the terms of the January 24, 1997 Order, the Court authorized plaintiff's counsel to conduct class discovery on Burkett and fourteen other applicants, selected by plaintiff's counsel, who also had been rejected for employment.

2. Form 2485 included, *inter alia,* the functional requirements of the data conversion operator position and the applicant's medical history.

3. Dr. Comer had, on previous occasions, visited a Postal Service Remote Encoding Center in Charleston, West Virginia and directly observed data conversion operators at work.

By letter dated July 13, 1995, Ms. Cocci informed Burkett that she had not met the medical requirements for the position of data conversion operator and was not, therefore, eligible for employment. Twelve of the fourteen other applicants also received the same form letter in July and August of that year.[4]

Burkett met with the Postal Service's EEO counselor, Pamela Stamper, on July 19, 1995. At or around this time, Ms. Stamper helped Burkett prepare an Informal Complaint of Discrimination form which, *inter alia*, informed the latter of her right to file a class complaint. On or about September 6, 1995, Burkett signed an EEO Complaint of Discrimination in the Postal Service.[5]

Approximately eight months later, Burkett filed her class complaint in this Court. As indicated above, the complaint alleges that the Postal Service, in rejecting Burkett and the other would be class members, ran afoul of the Rehabilitation Act of 1973. In the complaint, she specifically proposes a class consisting of her "and all other unnamed applicants for employment with the ... postal Service at its Remote Encoding Center in Martinsburg, West Virginia from 1995 to the present who were denied employment ... on medical grounds."

In the motion presently before the Court, Burkett maintains that this case should proceed as a class action pursuant to Fed.R.Civ. P.23. In so arguing, she asserts that the following five questions are common to the class:

1. Whether the USPS's policy of rejecting applicants for employment based upon a "direct threat to the applicant" analysis violates the Rehabilitation Act of 1973?

2. Whether the USPS's practice of rejecting applicants for employment because they have a record of physical impairments violates the Rehabilitation Act of 1973?

3. Whether the USPS's practice of rejecting applicants for employment because they are classified (or misclassified) as having physical impairments violates the Rehabilitation Act of 1973?

4. Whether the USPS's policy of rejecting applicants for employment based upon a risk of incurring future workers' compensation costs violates the Rehabilitation Act of 1973?

5. Whether the USPS's practice of allowing an associate area medical director, as opposed to the USPS hiring official, to determine whether a reasonable accommodation is possible violates the Rehabilitation Act of 1973?

## IV. *Discussion*

■ Pursuant to Fed. R. Civ. P. 23(a): One or more members of a class may sue or be sued as representative parties on behalf of all only if(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The party seeking certification has the burden of establishing these requirements.

---

4. The record demonstrates that two of the applicants were denied employment due to their failure to provide the medical service with the appropriate medical information.

5. In an addendum attached to her EEO Complaint, Burkett set forth the basis of her discrimination claim. The addendum provides in relevant part as follows:

Complainant alleges discrimination based on handicap. Specifically, claimant along with other class members, was assigned a risk factor. Based upon the assigned risk factor, claimant along with other class members, has been refused employment at the Remote Bar Coding Facility located in Falling Waters, West Virginia in violation of the Rehabilitation Act. Claimant alleges that there are between 45 and 100 people who are class members....
Claimant alleges everyone in the class was adversely affected by the same policy or practice in violation of the Rehabilitation Act.
Claimant alleges that her claims are typical of the other class members in that all members were assigned a risk factor upon which employment decisions were based in violation of the Rehabilitation Act.
Class representatives will adequately represent the interests of the class.

*Bear v. Oglebay*, 142 F.R.D. 129, 131 (N.D.W.Va.1992). Additionally, the case must fit within one of the three categories of class actions set forth in Rule 23(b). *Christman v. American Cyanamid Co.*, 92 F.R.D. 441, 446 (N.D.W.Va.1981). In the Fourth Circuit, certification questions are committed to the district court's sound discretion. *Stott v. Haworth*, 916 F.2d 134, 139 (4th Cir.1990).

In order to establish a violation under the Rehabilitation Act of 1973 (hereinafter "the Act"), a plaintiff must demonstrate: "(1) that he has a disability; (2) that he is otherwise qualified for the employment or benefit in question; and (3) that he was excluded from the employment or benefit due to discrimination solely on the basis of the disability." *Doe v. University of Maryland Medical System Corp.*, 50 F.3d 1261, 1264–65 (4th Cir. 1995) (referring to 29 U.S.C.A. § 794). An "individual with a disability" means "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C.A. § 706(8)(B).

An individual "is regarded as having an impairment" for purposes of 29 U.S.C.A. § 706(8)(B)(iii) if that person:

(A) has a physical or mental impairment that does not substantially limit major life activities but that is treated by a recipient as constituting such a limitation; (B) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (C) has none of the impairments defined in paragraph (j)(2)(i) of this section but is treated by a recipient as having such an impairment.

45 C.F.R. § 84.3(j)(2)(iv) (1996). "Major life activities" refers to "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii).

As the foregoing suggests, a plaintiff must, as a prerequisite to the successful assertion of a claim under the Act, establish that he is a disabled individual within the meaning of the statute. *Gupton v. Commonwealth of Virginia*, 14 F.3d 203, 205 (4th Cir.1994); *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir.1986). Resolution of the question of whether a plaintiff is in fact disabled requires an individualized, case-by-case inquiry. *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.* 53 F.3d 55, 59–60 (4th Cir.1995);[6] *Hughes v. Bedsole*, 48 F.3d 1376, 1388 (4th Cir.1995); *Forrisi*, 794 F.2d at 933. *In the view of several federal courts, the need for this individualized, fact-driven determination renders Rehabilitation Act and ADA actions ill-suited for class treatment.* See, e.g., *Chandler v. City of Dallas*, 2 F.3d 1385, 1396 (5th Cir.1993); *Davoll v. Webb*, 160 F.R.D. 142, 145–46 (D.Colo.1995); *Lintemuth v. Saturn Corp.*, No. 1:93–0211, 1994 WL 760811, at 4–6 (M.D.Tenn. Aug. 29, 1994), *report and recommendation approved by*, No. 1:93–0211, 1994 WL 761231 (M.D.Tenn. Oct. 31, 1994); *Rodriguez v. U.S. Dep't of Treasury*, 131 F.R.D. 1, 7–9 (D.D.C.1990).

In a perceived disability case, the issue of whether an employer regarded a job applicant as disabled within the meaning of the Act is a matter that the jury decides. *See Cook v. State of R.I., Dep't of MHRH*, 10 F.3d 17, 25 (1st Cir.1993). With regard to this question, a jury may conclude that an employer viewed a prospective employee as unable to perform a major life activity, namely working, if the former, in rejecting an applicant, betrays the belief that the individual's impairment prevents her from performing a wide range of jobs. *Id.* at 26. *See also Forrisi*, 794 F.2d at 935 (holding "that an employer regards an employee as handicapped in his or her ability to work by find-

---

**6.** *Ennis* involves an action brought under the Americans with Disabilities Act of 1990 (hereinafter "ADA"), 42 U.S.C.A. § 12101 *et seq.* (West 1995 & Supp.1997). The *Ennis* court made the above observation while addressing 42 U.S.C.A. § 12102(2), the provision which, in language virtually identical to 29 U.S.C.A. § 706(8)(B), sets forth the ADA definition of disability. Pursuant to 29 U.S.C.A. § 794(d), the substantive standards for determining liability under the Rehabilitation Act are the same as those applicable under the ADA. *Myers v. Hose*, 50 F.3d 278, 281 (4th Cir.1995). As a consequence, the Court may properly look to case law interpreting the ADA for guidance in the present matter.

ing the employee's impairment to foreclose generally the type of employment involved.").

■ In the present case, the plaintiffs are proceeding on a perceived disability theory.[7] As a threshold matter, therefore, Burkett and the other proposed class members, who undisputedly suffer from different medical conditions,[8] must demonstrate that the Postal Service regarded each as having an impairment which substantially limits one or more major life activities.[9] In order to make this showing, each class member will, in turn, have to introduce evidence concerning, *inter alia*, their medical history, the nature of their medical condition, and how their impairments were perceived by the Postal Service. Thus, the resolution of the question of whether the rejected applicants were covered by the Act would necessitate, in a manner wholly at odds with the interests that class litigation promotes, a series of "mini-trials" focusing on the facts and circumstances unique to each individual plaintiff. *See Rodriguez*, 131 F.R.D. at 9. For this reason, the Court finds this case to be inappropriate for class adjudication. *See Chandler*, 2 F.3d at 1396.[10]

Additionally, this need for an individualized inquiry into whether each plaintiff is disabled within the meaning of the Act undermines Burkett's effort to satisfy the Rule 23(a) certification prerequisites. Specifically, and in light of *Stott v. Haworth*, 916 F.2d 134 (4th Cir.1990), the particularized assessments that would be required in this case preclude the plaintiff from meeting the Rule 23(a)(2) commonality requirement.

In *Haworth*, a number of North Carolina state government employees who had held "exempt" positions[11] during the administration of a Democratic governor brought suit after being demoted or terminated following the election of a Republican governor. 916

7. In a footnote to her brief in support of her motion to certify, Burkett argues that she qualifies as a "record of impairment" disabled individual, 29 U.S.C.A. § 706(8)(B)(ii), and that "[m]any of the applicants also meet other parts of the definition [of disabled] as well." Nevertheless, she does not elaborate on either of these two claims and, instead, focuses on the allegation that the Postal Service regarded her and the other applicants as disabled. Accordingly, the Court treats this matter as a "perceived disability" case.

8. Burkett alleges that she suffers from deep vein thrombosis and that the other class members are afflicted with conditions as varied as osteoarthritis, seizure disorder, and back strain.

9. The plaintiffs, in their reply brief, refer to the "sedentary" nature of the data conversion operator position and distinguish it from a "skilled" job. Citing the First Circuit's decision in Cook they then argue that the fact that they were each denied a job as an encoder conclusively establishes that the Postal Service viewed them as substantially limited in their ability to work at all. In other words, the plaintiffs insist that they are each entitled to judgment as a matter of law on the perceived disability issue.

Evidence in the record, however, suggests that data conversion operators were required to type 7,150 keystrokes per hour with 98% accuracy while working 8 to 10 hour shifts with 5 to 10 minute breaks each hour. Given these requirements, the Court is unconvinced that the Postal Service's decision to reject an applicant for employment as a data conversion operator compels the conclusion that it regarded that individual as

unqualified for all data entry jobs or work in general. Indeed, the Court finds that, at the very least, a question of fact exists as to this issue.

10. In so holding, the Court does not declare that actions brought under the Act and the ADA are *per se* inappropriate for class certification. As plaintiffs correctly note, other courts have permitted handicap discrimination cases to proceed as class actions. *See, e.g., Vaughn v. Sullivan*, 83 F.3d 907 (7th Cir.1996)(involving challenge by disabled persons to state law which permitted the blind, but not other disabled persons, to disregard PASS income when calculating eligibility for Medicaid benefits); *Yaris v. Special Sch. Dist. of St. Louis County*, 780 F.2d 724 (8th Cir.1986) (involving challenge by handicapped school children to state policy which limited those children to 180 days of education per year); *Strathie v. Department of Transp.*, 716 F.2d 227 (3rd Cir.1983) (involving challenge by hearing impaired school bus drivers to licensing regulations).

In the above actions, plaintiffs who were unquestionably disabled—*i.e.* litigants whose disabled status was not challenged by the defendants therein—asserted claims under the Act. Thus, the individualized disability determinations, which make the present matter an inappropriate candidate for class treatment, were not required in these cases. In denying certification today, the Court simply notes the significance of this distinction.

11. Such a position was "exempt" from a state law which protected government employees from adverse personnel actions without just cause.

F.2d at 136–37. In these individual suits, which sought damages and injunctive relief, each plaintiff alleged that she had been subject to adverse personnel action as a result of her political affiliation in violation of the First Amendment. *Id.* at 137. The plaintiffs then moved to certify a class consisting of exempt employees who had been, or would be, "terminated, transferred, [or] demoted.....because of their political affiliation or activities," and the district court granted the motion. *Id.*

Thereafter, the defendants, *inter alia,* moved to decertify the class. *Id.* The district court denied this motion. *Id. at* 138. In declining to decertify, the court found that the question of whether the Republican administration had engaged in a policy of firing employees because of their political affiliation "was a central issue that predominated and was capable of class resolution." *Id.* On appeal, the Fourth Circuit reversed.

In overturning the district court, the Fourth Circuit observed that, under Supreme Court precedent, the patronage dismissal of a governmental official from a particular job does not violate the Constitution if party affiliation is an appropriate requirement for that job. *Id.* at 140–41. The Fourth Circuit in turn noted that a reviewing court, in assessing whether political affiliation is indeed a legitimate requirement for a particular job, must focus on the nature of the position in question. Specifically, the Court held that this determination requires: 1) an inquiry into whether the position "relates to 'partisan political interests....[or] concerns'"; and 2) an examination of the particular responsibilities of the position. *Id.* at 141–42.

Applying these principles, the Fourth Circuit found that the district court had improperly granted class certification. In so holding, the Court noted that the plaintiffs held a wide range of jobs "including, *inter alia,* Special Assistant to the Secretary of the North Carolina Fugitive Extradition Program, Business Manager of a state hospital, [and] Troop Commander of the Highway Pa-

trol ..." *Id.* at 143. The Fourth Circuit then concluded that:

> the case at bar presents no substantial facts or questions of law common or typical to all members of the certified class. We can find no commonality or typicality between the claims of each plaintiff that would propel this case through class treatment when the positions held by each plaintiff were so divergent. The only question common to each member of the class is whether or not his or her position was one that was subject to patronage dismissal. This question is in no way dispositive and simply propels the action into a posture where judicial scrutiny is necessary for just adjudication; scrutiny that requires a district court to do a case by case, position by position, activity by activity analysis of the First Amendment questions raised by the pleadings.

*Id.* at 145. This Court finds *Haworth* relevant to the certification question presented here.

In the present matter, Burkett identifies five questions—each relating to the issue of whether the Postal Service, through a hiring practice or policy, violated the Act—as common to the proposed class.[12] Nevertheless, the Court cannot reach the central question of whether the Postal Service violated the Act without first determining that each plaintiff was a disabled individual entitled to the Act's protection. Moreover, as indicated above, the members of the proposed class here have different medical conditions and argue that they were perceived as disabled. Thus, as in *Haworth,* the resolution of the present action mandates a "judicial investigation into the individual claims of each plaintiff" which precludes the establishment of commonality under Rule 23(a)(2). *See id.* at 139.

### V. *Conclusion*

Based on the foregoing, the Court finds that class disposition of the present matter is inappropriate. Accordingly, the plaintiff's motion for class certification (Docket # 40) is

12. *See supra* pp. 272–73.

DENIED.[13]

It is so **ORDERED**.

---

13. In her reply brief, Burkett asks the Court to certify any decision denying class action treatment as a final, appealable judgment under Fed. R.Civ.P. 54(b). Initially, the Court was inclined to grant this request. However, the Court is now convinced that certification is not warranted in this case.

In order to effectuate a Rule 54(b) certification, a district court must first determine that the judgment in question is a final judgment. *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335 (4th Cir.1993). With regard to this issue, it is settled that "denial of class certification is not an appealable final order." *Himler v. Comprehensive Care Corp.*, 790 F.Supp. 114, 116 (E.D.Va.1992) (citations omitted), *appeal dismissed*, No. 92–1672, 1993 WL 132941 (4th Cir. Apr. 28, 1993). Accordingly, the Court declines to certify today's decision as a final judgment pursuant to Rule 54(b).