**Kimberly KENT–CHOJNICKI,
et al., Plaintiffs,**

v.

**Marvin T. RUNYON, Postmaster
General, Defendant.**

No. 96–CV–360A.

United States District Court,
W.D. New York.

March 30, 1998.

Jennifer Coleman, for Plaintiffs.

Donald Simet, for Defendant.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Hugh B. Scott pursuant to 28 U.S.C. § 636(b)(1), on July 26, 1996. On October 9, 1997, plaintiffs filed a motion for class certification. On January 23, 1998, Magistrate Judge Scott filed a Report and Recommendation, recommending that plaintiffs' motion be denied.

Plaintiff filed objections to the Report and Recommendation on March 20, 1998. Oral argument on the objections was held on March 30, 1998.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Scott's Report and Recommendation, plaintiffs' motion for class certification is denied. The case is referred back to the Magistrate Judge for further proceedings.

IT IS SO ORDERED.

### Report & Recommendation

Before the Court is plaintiffs' motion for class certification (Docket No. 16).

### Background

The plaintiffs are or were employees of the United States Postal Service ("USPS"), each of whom have allegedly suffered a work-related injury resulting in a permanent partial disability as determined by the USPS. It is alleged that these employees subsequently returned to work with certain physical restrictions as determined by their doctors. In general, the plaintiffs contend that subsequent to their return to work in a limited capacity, each was required to accept "Rehabilitation Job Offers" for positions "(i) outside their doctor prescribed limitations; (ii) outside their grade/level; (iii) outside their commuting area; (iv) outside their regular work area; (v) to jobs that are part-time instead of full time; and/or (vi) to job schedules that are flexible instead of regular." (Amended Complaint at ¶ 17(c).)

Each of the named plaintiffs allege that their claims are "typical" of the claims of the purported class. Plaintiff Kimberly Kent-Chojnicki alleges that on or about July 13, 1989, she suffered a work related injury, (a herniated disc) and has been diagnosed with thoracic strain and Degenerative Cervical

Disc Disease and Degenerative Lumbar Disc Disease. Following her recovery, Kent–Chojnicki alleges that she was permitted to return to work as a partially disabled employee under physician required limitations including weight restrictions and the avoidance of various types of movement. With these limitations, she returned to work (at Area 142) as a grade/level 4, full time mail processor.[1] Kent–Chojnicki alleges that at a meeting on or about October 16, 1994, Mary McNeil, Senior Compensation Specialist, proposed that Kent–Chojnicki accept reassignment to the Lockport area (Area 140) as a part time, flexible, office clerk, grade 4. She alleges that she was told that if she did not accept reassignment she would be terminated.[2] She claims that the "Rehabilitation Job Offer" effected a loss of seniority; transfer outside the 142 area and outside her regular commuting area; loss of annual leave; loss of retirement pay; loss of bidding rights; loss of a guaranteed forty hour work week; loss of holiday pay; loss of overtime pay; and loss of two consecutive days off. Kent–Chojnicki rejected the Rehabilitation Job Offer. Kent–Chojnicki claims that she was subsequently offered other part-time job offers substantially the same as the original Rehabilitation Job Offer. Each of these part-time job offers entailed the same losses (pay, hours or benefits) as the Rehabilitation Job Offer. When Kent–Chojnicki again refused she received notice that she was removed as an employee of the USPS. (Amended Complaint at ¶¶ 19(a)–(k).)

1. She alleges that she worked five days per week on Tour 3, on a fixed schedule of 7:50 p.m.–4:20 a.m., with Monday and Tuesday off. (Amended Complaint at ¶ 19(d).)

2. This was allegedly confirmed in a letter dated November 21, 1994 sent to Kent–Chojnicki from Timothy J. Bohen, Manager Post Office Operations. (Amended Complaint at ¶ 19(f).)

3. On or about January of 1995, plaintiff Kent–Chojnicki contacted the Western New York District Equal Employment Opportunities Office (E.E.O.C.) and requested counseling on behalf of herself and approximately 20 other co-workers at the United States Postal Service ("USPS") who had experienced work related injuries and who were working in limited-duty assignments. The plaintiff, and her co-workers, sought to challenge their re-assignment from preexisting limited-duty

Plaintiff Roberta Repertorio alleges that she received a series of Rehabilitation Job Offers, each entailing responsibilities and requirements that were outside the scope of her physician's mandated medical limitations. She also asserts that when she refused to accept such a position she was removed from her employment with the USPS. (Amended Complaint at ¶ 20.)

Plaintiff John Moskel asserts that he accepted (under protest) the Rehabilitation Job Offer made to him, even though it entailed responsibilities and requirements that were outside the scope of his physician's mandated medical limitations. He alleges that he was subjected to unrelenting abuse and harassment by co-workers and supervisors because of his disability, and that he suffered inordinate stress and psychological disturbance as a direct result of the harassment rendering him "incapacitated." (Amended Complaint at ¶ 21.)

### The Proposed Class

The sole cause of action in the Amended Complaint asserts that the re-assignment of the putative class members violated §§ 501 and 504 of the Rehabilitation Act of 1973.[3]

Pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, the plaintiffs seek certification of a class of individuals consisting of:

(a) persons employed by the United States Post Office ("USPS") on or before December 10, 1994;

positions to newly created limited-duty positions which affected their work hours and job locations.

Because the plaintiff's complaint was not resolved at the counseling stage, on March 13, 1995, the plaintiff filed a formal class-action complaint with the E.E.O.C. The complaint filed with the E.E.O.C. asserted that she and the putative class members were permanently and partially disabled as a result of work related injuries and that they have been discriminated against by compulsory reassignment from their current job assignments to newly-created job assignments. The plaintiff filed this federal court action on May 31, 1996, inasmuch as there was no final decision on her E.E.O.C. complaint after 180 days of filing.

(b) who are employed by the USPS in any of its New York operations;

(c) who experienced a work-related injury resulting in a permanent partial disability/handicap as determined by the USPS; and

(d) who were denied employment or who were discriminated against in their employment by the USPS on account of their disability/handicap.

### *Discussion*
### Rehabilitation Act Claims

■ As noted above, the Amended Complaint asserts only one cause of action, an alleged violation of §§ 501 and 504 of the Rehabilitation Act of 1973. To establish a prima facie case of employment discrimination under the Rehabilitation Act, a plaintiff must prove that: (1) he is an "individual with a disability," (2) he was "otherwise qualified" for a position, (3) he was denied that position on the basis of his disability, and (4) the employer receives federal funds. *D'Amico v. City of New York*, 132 F.3d 145 (2d Cir.1998); *Borkowski v. Valley Centr. Sch. Dist.*, 63 F.3d 131, 135 (2d Cir.1995).

■ Under the Rehabilitation Act, an "individual with a disability" is any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment. *Francis v. City of Meriden*, 129 F.3d 281 (2nd Cir.1997). A "physical impairment" is defined as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory ..., cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." *Id.* Physical impairments must substantially limit one or more of an individual's "major life activities." 29 U.S.C. § 706(8)(B). Major life activities are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii). See *Francis*, 129 F.3d. at 284.

### Standing

■ The defendant has alleged that the plaintiffs lack standing to maintain this action. Standing is essential to a court's ability to entertain any claim. A plaintiff must have individual standing to assert the claims against each defendant being sued by him. See *Ramos v. Patrician Equities Corp.* 765 F.Supp. 1196, 1199 (S.D.N.Y.1991). "A court must assess standing to sue based upon the standing of the named plaintiff and not upon the standing of unidentified class members." *Adair v. Sorenson* (D.Mass.1991) 134 F.R.D. 13, 16, citing *Warth v. Seldin* (1975) 422 U.S. 490, 502, 95 S.Ct. 2197, 45 L.Ed.2d 343; *Krouner v. The American Heritage Fund Inc.*, 1997 WL 452021 (S.D.N.Y.1997). An analysis of the standing question therefore precedes any determination under Fed. R.Civ.P. 23. See *German v. Federal Home Loan Mortgage Corp.*, 885 F.Supp. 537, 547 (S.D.N.Y.1995) (citing *Vulcan Society of Westchester County v. Fire Dep't of City of White Plains*, 82 F.R.D. 379, 398 (S.D.N.Y. 1979)).

■ A plaintiff must allege such a personal stake in the outcome of the controversy as to warrant his invocation of ... jurisdiction and to justify exercise of the court's remedial power on his behalf. *German*, 885 F.Supp. at 547 (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). "At the core of the standing doctrine is the requirement that a plaintiff 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *German*, 885 F.Supp. at 547 (quoting *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991)). The alleged injury must be distinct and palpable. *German*, 885 F.Supp. at 547 (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)).

■ The Court of Appeals has prescribed a three-part inquiry to determine whether plaintiffs have proper standing. A plaintiff must plead all three of the following elements: First, plaintiffs must show that they

have suffered an injury in fact that is both concrete in nature and particularized to them. Second, the injury must be fairly traceable to the defendants' conduct. Third, the injury must be redressable by removal of defendants' conduct. The second and third prongs ... dovetail, essentially both seeking a causal nexus between the plaintiffs injury and the defendant's assertedly unlawful act. *In re United States Catholic Conference*, 885 F.2d 1020, 1023–24 (2d Cir.1989), *cert. denied*, 495 U.S. 918, 110 S.Ct. 1946, 109 L.Ed.2d 309 (1990).

■ The named plaintiffs in this case have sufficiently pled concrete injuries, traceable to the defendant's alleged conduct, which are redressable. Thus, the plaintiffs have standing to maintain this lawsuit.

## General Principles of Class Certification

■ It is well established that the party seeking class certification bears the burden of showing that the requirements of numerosity, commonality, typicality and adequacy of representation set forth in Rule 23(a) of the Federal Rules of Civil Procedure have been satisfied and that the putative class falls within one of the three categories set forth in Rule 23(b). *Amchem Products, Inc. v. Windsor*, — U.S. —, —, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997); *Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir.1994). In this regard, the allegations set forth in the complaint are accepted as true. *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661, n. 15 (2d Cir.1978); *In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 501 (S.D.N.Y.1996). However, the Court is required to scrutinize the pleadings and other submissions to determine whether the prerequisites of Rule 23(a) have been met. See *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

## Commonality and Typicality

■ The commonality and typicality requirements tend to merge into one another, so that similar considerations animate the analysis of these factors. *Marisol A., by Forbes v. Giuliani*, 126 F.3d 372, 376 (2nd Cir.1997). The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact. See *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166–67 (2d Cir.1987); *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir.1994). Typicality, by contrast, requires that the claims of the class representatives be typical of those of the class, and "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert*, 960 F.2d at 291 (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968), *vacated on other grounds*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)).

■ The plaintiffs allege the following common questions of fact:

17. There are questions of fact common to all class members including, but not limited, to:

(a) Each suffered a work related injury causing permanent, partial disability/handicap which required accommodation by the USPS through limited or light duty work assignments, modification of bid job, or otherwise as required by USPS polices and procedures;

(b) Each was subjected to workplace harassment by co-workers and management because of their limited duty status and job restrictions;

(c) Each received "Rehabilitation Job Offers" to jobs: (i) outside their doctor prescribed limitations; (ii) outside their grade/level; (iii) outside their commuting area; (iv) outside their regular work area; (v) to jobs that are part time instead of full time; and/or (vi) to jobs schedules that are flexible instead of regular;

(d) Each was eligible under applicable collective bargaining agreements, and each was otherwise qualified and able to perform the functions of, available regular positions within the USPS, with or without reasonable accommodation, within doctor prescribed limitations, at their grade/level, at their regular work location.

(e) Each suffered economic damage and personal injury as a result of the matters alleged herein.

(Amended Complaint at ¶ 17.)

The defendant's primary argument in opposition to class certification is that the nature of a Rehabilitation Act claim renders class certification inappropriate. The defendant relies heavily on *Burkett v. United States Postal Service,* 175 F.R.D. 220 (N.D.W.Va.1997), wherein the Court denied class certification to a group of individuals who were not hired by the USPS because they "posed a high risk of suffering an injury or exacerbating a preexisting condition." In *Burkett,* the Court noted that "[i]n the view of several federal courts," the need for the individualized fact-driven determination of whether a plaintiff is in fact disabled under the statute renders Rehabilitation Act actions "ill-suited for class treatment." *Burkett* 175 F.R.D. at 223.

The plaintiff argues that *Burkett* is inapposite, because in the case at hand each of the putative class members has already been found to be disabled in a manner which limits a "major life activity" (working) by the USPS itself. The plaintiffs argue that this finding of disability by the USPS suffices the standard under the Rehabilitation Act.

Whether or not an individual is "disabled" as defined under the statute, however, is not the only individualized fact determination which must be made with respect to the Rehabilitation Act claims in this matter. The plaintiffs' own assertions of the "questions of fact common to all class members" (Amended Complaint ¶ 17 quoted above), reflect that individualized analysis will be necessary with respect to several issues. For example, paragraph 17(b) suggests that "[e]ach [putative class member] was subjected to workplace harassment by co-workers and management because of their limited duty status and job restrictions." The defendant denies this allegation. (Answer to Amended Complaint at ¶ 17). The plaintiffs do not state how this question may be answered without looking to the experience of each individual class member. Proving such

harassment toward one putative class member does not establish the matter for the entire class. In paragraph 17(c), the plaintiffs state that "each received "Rehabilitation Job Offers" to jobs: (i) outside their doctor prescribed limitations; (ii) outside their grade/level; (iii) outside their commuting area; (iv) outside their regular work area; (v) to jobs that are part time instead of full time; and/or (vi) to jobs schedules that are flexible instead of regular." The defendant again denies this allegation. The plaintiffs have failed to demonstrate how a determination can be made as to whether a class member was asked to perform work "outside their doctor prescribed limitations" without an analysis of each individual putative class member's "doctor prescribed limitations" and the respective requirements of the job they were asked to perform. The same is true with respect to the plaintiffs' allegations regarding to "Rehabilitation Job Offers" that were allegedly outside a putative class members grade level, commuting area, or regular work area, or that each class member was otherwise qualified and able to perform functions of available regular positions within the USPS, (with or without accommodations) within doctor prescribed limitations. Each would require an individualized inquiry, analysis and determination. Even the creation of subclasses would not alleviate the need for individualized fact-driven determinations.

Based on the above, certification of the proposed class would be inappropriate.[4]

### Conclusion

Based on the above, the motion for class certification should be denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28**

4. Because this factor alone is determinative of the instant motion, the Court will not discuss the

numerosity and adequacy of representation issues.

U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b) and W.D.N.Y. Local Rule 72(a)(3).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *F.D.I.C. v. Hillcrest Associates,* 66 F.3d 566 (2d Cir.1995); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir.1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See *Paterson–Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(a)(3) may result in the District Court's refusal to consider the objection.**

So ordered.

SCOTT, United States Magistrate Judge.

Dated: Buffalo, New York

January 23, 1998

